IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOE E. SILVA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:04CV3337 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| HAROLD W. CLARKE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on filing no. 27, the defendants' Motion for Summary Judgment, and filing no. 30, the defendants' Motion for a Stay of Proceedings and Protective Order Pending a Ruling on the Motion for Summary Judgment. The plaintiff, Joe E. Silva, previously a prisoner in the custody of the Nebraska Department of Correctional Services ("DCS"), has not responded to the motions. The plaintiff brings this action pursuant to 42 U.S.C. § 1983, complaining of his treatment after the State of Kansas transferred him to Nebraska for safekeeping because the plaintiff's former employment in Kansas law enforcement exposed him to substantial risk of attack by other inmates.

**Background**

The plaintiff came to DCS from the Kansas Department of Corrections ("KDOC") in January of 2000, pursuant to the Interstate Corrections Compact between Nebraska and Kansas (see Interstate Corrections Compact, filing no. 29-4). On February 15, 2000, DCS placed the plaintiff in housing unit # 3 of the Nebraska State Penitentiary ("NSP"), a unit consisting of two-man cells, housing inmates classified to maximum and medium custody.

1

The defendants are DCS and NSP corrections officials sued and served by the plaintiff in their individual and official capacities.

The plaintiff, while living in housing unit # 3, felt relatively safe from attack by other inmates, and he wished to remain there. The irony of this case is that the plaintiff, as a model prisoner who interacted well with others, distinguished himself academically and incurred no misconduct reports, earned a promotion to a minimum custody classification in 2002, within two years of his arrival at the NSP.

Ordinarily, a prisoner would likely welcome such a promotion, which involves a transfer to a less restrictive housing environment such as dormitory housing at the NSP or a transfer to the Omaha Correctional Center ("OCC"). Unfortunately, the plaintiff feared that a dorm setting or a transfer to OCC would expose him to heightened security risks in light of his law enforcement background. Therefore, the plaintiff, fearing the hazards of less secure housing, appealed his reclassification to minimum custody. However, in light of his exemplary conduct as a prisoner, he did not prevail in resisting his promotion to a less restrictive custody classification.

Nevertheless, for two years thereafter, the plaintiff managed to fight off any move out of NSP housing unit # 3. Finally, on February 26, 2004, the Unit Manager of housing unit # 3 notified the plaintiff that it was time to move to the dorm at NSP. The plaintiff vehemently objected. The two then argued over whether the plaintiff would request protective custody to avoid a dorm setting, and the plaintiff was taken to segregation, where he remained for approximately 31 days pending an investigation of the need for

protective custody.

A case worker interviewed the plaintiff on March 18, 2004, and the plaintiff expressed his fears about the potential risks of dorm housing in light of his extensive history in law enforcement. Later in March of 2004, a case manager in the segregation unit warned the plaintiff that if he continued to demand protective custody, he would be sent back to Kansas. Feeling threatened by that and similar "threats," the plaintiff signed a request to be removed from protective custody. However, he protests that he was coerced into relinquishing his request for protective custody (see generally filing nos. 29-7). The plaintiff then went into a dorm unit at the NSP. Upon his release from segregation, delays occurred in the return of the plaintiff's property, including school books and legal materials.

## Injunctive Relief

The plaintiff eventually returned to Kansas and is presently released from custody under supervision. Thus, any claim the plaintiff might have had for injunctive relief against the defendants became moot when he left their custody. "A claim for equitable relief is moot 'absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again.'" Randolph v. Rodgers, 170 F.3d 850, 856-57 (8th Cir. 1999). When, as in this case, "an inmate has been transferred to another institution, his claim for injunctive relief against the warden of the first prison to improve the former prison's conditions is moot." Id. at 857, citing Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). The same is true upon release from custody.

### Damages - Official Capacity

As previously pointed out in filing no. 18, any claim for damages by the plaintiff against the defendants in their official capacity must be dismissed. The Eleventh Amendment to the United States Constitution bars claims for monetary relief by private parties against a state, a state agency or an employee of a state in his or her official capacity. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). The Eleventh Amendment prevents the plaintiff from recovering damages pursuant to 42 U.S.C. § 1983 from state employees in their official capacity because a suit against a public employee in his or her official capacity is considered a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Therefore, the plaintiff's claims against state employees in their official capacity is in reality a claim against the state.

### Damages - Individual Capacity

The remedy of prospective injunctive relief to prevent future violations of federal law is not available for the plaintiff's claims against the defendants in their individual capacity, as the plaintiff is no longer in their custody. Thus, the only issue in this case is whether the defendants, in their individual capacity, are liable to the plaintiff for damages.

### Qualified Immunity

The defendants claim qualified immunity for the plaintiff's damages claims against them in their individual capacity. A government official, sued for damages in his or her

individual capacity pursuant to 42 U.S.C. § 1983, is entitled to qualified immunity unless the plaintiff shows that the official violated a "clearly established" federal statutory or constitutional right of the plaintiff. For a right to be considered "clearly established," the plaintiff must demonstrate that a reasonable person would have known: (a) of the plaintiff's right and (b) that the conduct at issue violated the plaintiff's right. See Anderson v. Creighton, 483 U.S. 635, 639-40 (1987): "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (citations omitted).

Qualified immunity is the norm. "[The plaintiff's] burden is not easily discharged: 'That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*.'" Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996) (emphasis in original; citation omitted). "Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful 'in light of clearly established law and the information [that the defendant] possessed .... The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." ' " Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000).

As the threshold inquiry for a summary judgment motion based on qualified

immunity, the court considers whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendant's conduct violated a constitutional right. Brosseau v. Haugen, 125 S.Ct. 596, 598 (2004); Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005). "If those facts, once established, would not amount to a constitutional violation, the inquiry ends." McVay ex rel. Estate of McVay v. Sisters of Mercy Health System, 399 F.3d 904, 908 (8th Cir. 2005). See also Saucier v. Katz, 533 U.S. 194, 201 (2001) ("Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry."), *citing* Siegert v. Gilley, 500 U.S. 226, 232 (1991).

If the plaintiff has sufficiently alleged the violation of a constitutional right, "the next inquiry 'is to ask whether the right was clearly established.'" Frye v. Kansas City Missouri Police Dept., 375 F.3d 785, 789 (8th Cir. 2004) (citation omitted). As explained in Hope v. Pelzer, 536 U.S. 730 (2002), a government employee charged with the federal criminal offense of willfully and under color of law depriving a person of constitutional rights, under 18 U.S.C. § 242, is entitled to "fair warning" that the conduct in question would deprive the victim of a constitutional right. Id. at 739-40. The "fair warning" requirement of 18 U.S.C. § 242 is identical to the qualified immunity standard for a civil damages action under 42 U.S.C. § 1983. Id. at 740-41. Thus, the "salient question" is whether the state of the law when the defendant acted gave the defendant "fair warning" that his or her conduct was unconstitutional. Id. at 741. "If the law did not put the defendant on notice that his or her conduct would be clearly unlawful, summary judgment based on qualified immunity is

6

appropriate." Saucier v. Katz, 533 U.S. 194, 202 (2001). Put another way, "[u]nder the doctrine of qualified immunity, 'officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.'" Figg v. Schroeder, 312 F.3d 625, 636 (4th Cir. 2002) (citation omitted).

## Due Process

The plaintiff's intraprison transfers to segregation and to the dorm housing unit were not the kind of "atypical and significant hardship(s) ... in relation to the ordinary incidents of prison life" that implicate the Due Process Clause. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Therefore, the plaintiff has not stated a claim on which relief may be granted under the Due Process Clause.

## Cruel and Unusual Punishment

Under the Eighth Amendment, "a failure-to-protect claim 'contains two components: 1) an objectively serious deprivation; and 2) a subjectively culpable state of mind.'" Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003), citing Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996). In this case, the summary judgment record lends no support to the view that any defendant disregarded a known, excessive risk of serious harm to the plaintiff's safety. The state of the law and the factual circumstances when the defendants acted gave the defendants no "fair warning," Hope v. Pelzer, 536 U.S. 730, 739-41 (2002), that they were violating the plaintiff's right to be protected from an excessive risk of harm. As required by the Interstate Corrections Compact, the defendants sought and obtained permission from KDOR before reclassifying the plaintiff to minimum custody (filing no. 29-3). Two years

7

later, NSP moved the plaintiff to a dorm housing unit, after which absolutely nothing actually happened to harm him. Therefore, the defendants violated no clearly established Eighth Amendment rights of the plaintiff in the circumstances of this case.

### Access to the Courts

The plaintiff complains of delayed return of his legal and school materials after his release from segregation. However, the plaintiff does not point to any loss or injury of constitutional magnitude which occurred as a result. The plaintiff has not alleged a factual basis for the "actual injury" required of a claim for denial of access to the courts under the Supreme Court's decision in Lewis v. Casey, 518 U.S. 343 (1996). "Lewis explains and narrows the Supreme Court's earlier holding in Bounds v. Smith, 430 U.S. 817 ... (1977)." Cody v. Weber, 256 F.3d 764, 768 (8th Cir. 2001) (With sufficient factual allegations of actual injury, "[t]he taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts.").

While not an infliction of punishment, the failure to return the plaintiff's property promptly could be considered negligent. Nevertheless, the United States Constitution does not protect citizens against the negligence of their public officials. The Eighth Amendment to the Constitution is violated by "deliberate indifference" to, or "wanton disregard" of, an individual's rights. Claims based on negligence, on the other hand, are the province of state and local tort claims laws. Accordingly, the plaintiff has not stated a claim on which relief may be granted under the federal Constitution based on denial of access to the courts.

Retaliation

The plaintiff characterizes the defendants' conduct as retaliatory, i.e., motivated by spite because the plaintiff had appealed his promotion to minimum custody. However, the plaintiff provides no evidence whatsoever in support of that implausible theory. Without deciding disputed issues of fact, I note that the plaintiff has presented no evidence whatsoever to counter the equally or more likely proposition that the defendants simply wanted to move him out of housing unit # 3 because they needed the space for inmates classified to maximum/medium custody, and he had proved trustworthy of a less restrictive custodial setting. Therefore, no clearly established rights of the plaintiff have been violated by the defendants' conduct in this case.

**Summary Judgment**

"A district court properly grants summary judgment when the record, viewed in the light most favorable to the nonmoving party, 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c)." Gatlin ex rel. Estate of Gatlin v. Green, 362 F.3d 1089, 1093 (8th Cir. 2004). "To survive summary judgment based on the affirmative defense of qualified immunity, a claimant must '(1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right.'" Id. (Citations omitted.)

The determination of whether qualified immunity is applicable in given

9

circumstances is one of 'objective reasonableness.'... The issue is not 'whether the defendant acted wrongly, but whether reasonable persons would know they acted in a manner which deprived another of a known constitutional right.'... The defendant bears the burden of proof on this affirmative defense."  Herts v. Smith, 345 F.3d 581, 585 (8th Cir. 2003) (citations omitted).  Accord Davis v. Hall, 375 F.3d 703, 711 (8th Cir. 2004): "What this means in practice is that whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  (Citations and internal quotation marks omitted.)

In this case, the plaintiff claims that he was "put in harm's way" in two respects (dormitory housing and delayed return of property).  In essence, the plaintiff claims damages for the emotional distress he suffered because he subjectively perceived enhanced threats to his welfare which did not materialize.  The plaintiff has offered no evidence to rebut the defendants' demonstration of the objective legal reasonableness of their actions.

THEREFORE, IT IS ORDERED:

1.     That filing no. 27, the defendants' Motion for Summary Judgment, is granted insofar as filing no. 27 is consistent with this Memorandum and Order;

2.     That filing no. 30, the defendants' Motion for a Stay of Proceedings and Protective Order Pending a Ruling on the Motion for Summary Judgment, is denied as

moot; and

3. That judgment will be entered in accordance with this Memorandum and Order.

DATED this 5th day of July, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge